UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT FOR NEW YORK



- - - - - - - - - - - - - - - - - - - - - - - - - - -x

JULIETTE WARD,

     Plaintiff,

 - against -

CYBERSETTLE, INC. and
CHARLES BROFMAN, individually,

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

**05 CIV. 6945**

JUDGE McMahon

COMPLAINT

PLAINTIFF DEMANDS
A TRIAL BY JURY

ECF CASE

   Plaintiff Juliette Ward ("plaintiff" or "Ward"), by her attorneys, CANTER LAW

FIRM P.C., complaining of defendants Cybersettle Inc. ("Cybersettle") and Charles Brofman

("Brofman") (collectively "defendants"), alleges the following:

<u>NATURE OF ACTION</u>

   1. This action is brought to remedy claims of sexual harassment and

employment discrimination, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e <u>et seq.</u>, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981A ("Title VII"), and

the New York State Human Rights Law, Executive Law §§ 290 <u>et seq.</u> (the "Human Rights

Law").

   2. Plaintiff seeks declaratory relief, compensatory and punitive damages, and

other appropriate legal and equitable relief.

## JURISDICTION AND VENUE

3.    Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), on or about December 14, 2004, complaining of the unlawful acts alleged herein.  Plaintiff received a Notice of Right to Sue from the EEOC, dated June 21, 2005, a copy of which is annexed hereto as Exhibit "A".  This action has therefore been timely commenced and all administrative conditions precedent have been complied with by plaintiff.

4.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3).  This Court has supplemental jurisdiction over plaintiff's state law claims, pursuant to 28 U.S.C. § 1367.

5.    Venue is proper in the Southern District for New York, pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices complained of occurred within this district and defendants regularly do business within this district.

## PARTIES

6.    Plaintiff is a 43-year old woman and resident of Yonkers, New York.

7.    Cybersettle is a corporation organized and existing under the laws of the State of New York, with its principle place of business located at 44 South Broadway, in the City of White Plains, County of Westchester, State of New York.

8.    At all relevant times, upon information and belief, Brofman was and is the President and Chief Executive Officer of Cybersettle.

9.    Cybersettle is an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b), and the Human Rights Law § 292(5).

10.     Brofman is an employer and "aider and abettor" within the meaning of the Human Rights Law.

## FACTUAL ALLEGATIONS

11.     On or about April 12th, 2004 until July 1, 2004, Ward was an employee at Cybersettle.

12.     Ward worked full-time for Cybersettle working as a telephone liaison between attorneys who were attempting to settle their respective claims.

13.     Upon information and belief, Brofman oversaw the entire operation of Cybersettle, including staffing, purchasing and accounting.

14.     Upon information and belief, Brofman's office was located in the Cybersettle offices, at 44 South Broadway, City of White Plains, County of Westchester, State of New York.

15.     During Ward's first day of work, on or about April 12th, 2004, Ward met Brofman for the first time at which point Brofman asked Ward about inter-office dating, how she felt about it and indicated that there was at least one marriage that started as inter-office dating.

16.     In or about early May 2004, Brofman approached Ward's cubicle to ask Ward if she had ever seen the computer room.  While the two were walking through the aisles of the internal hard drive room, Brofman leaned back and stared directly at Ward's rear end and then gave Ward a smirk before allowing her to return to her seat.

17.     Directly after the aforementioned incident, Ward did not want to believe what happened and it surprised her that the President of the company would do something so unprofessional.

18.     In or about the middle of May 2004, Brofman again approached Ward in the kitchen while they were alone. While the two were conversing, Brofman leaned back to again stare at Ward's rear end and smirk which created an extremely unusual and stressful and awkward environment for Ward.

19.     The rest of the aforementioned workday, Plaintiff tried to avoid Brofman's lewdness and further humiliation and embarrassment by steering clear of him. When Brofman did approach her, Plaintiff became extremely frightened and intimidated and had to sneak into the ladies' room away from the office suites in order to avoid Brofman.

20.     In or about early June 2004, while Ward was on the phone conducting work for Cybersettle, Brofman approached the area in which Plaintiff's two co-workers were located and after they both received calls, Brofman approached plaintiff's workstation area to discuss the defendant Cybersettle's softball teams.

21.     At this point, while Brofman was swinging an imaginary softball bat, Brofman boldly grabbed his trousers holding and pulling his penis outward in a lewd and offensive gesture and in a manner to offend and intimidate plaintiff.

22.     As Brofman was standing sideways to Ward, continuing to grope his penis, Ward could see the entire length and width of Brofman's penis. While conducting this immature and unspeakable act, Brofman continued to smirk at Ward until he knew she observed his perverted actions.

23.     After attempting to recollect her composure, plaintiff struggled through the workday and upon returning home, read Cybersettle's Sexual Harassment rules for some sort of guidance.

4

24.     Later in mid-June, 2004, Brofman continued his lewd, offensive and vulgar acts by approaching Ward's work station and pressing and gyrating his penis against the top of her work station so that Ward could again see the outline of Brofman's penis. Brofman simultaneously made sexual comments regarding a bagel that was on plaintiff's desk. This inexcusable encounter continued for about thirty (30) seconds during which plaintiff became mortified, frozen with fear, embarrassed, humiliated, and disgraced. From this point on, Ward attempted to avoid Brofman.

25.     On or about June 25, 2004, Plaintiff attended the Cybersettle company picnic where she again made it her top priority to avoid direct interaction with Brofman. After the softball game, Brofman approached plaintiff and introduced her to Brofman's wife. Brofman told his wife that Ward did not play because "she did not want to dirty herself."

26.     Plaintiff then attempted to mingle and socialize with her co-workers, seeking safety in the group setting, until people began to pack up and leave for home. While everyone was preparing to leave, Plaintiff again found herself alone, on the bleachers, face-to-face with Brofman, who told her that he knew about her record, referring to Ward's misdemeanor conviction more than twenty years (20) earlier. Plaintiff made several attempts to leave the park with coworkers but could not get a ride. Plaintiff also circled the park discretely looking for a phone to call a taxi; again to no avail.

27.     Upon information and belief, Brofman who was seated above plaintiff on the bleachers, overheard everyone talking about there plans for the weekend wherein Plaintiff indicated that she was going to an Irish Festival in New Jersey.

28.     After making Ward aware that he knew of her prior conviction(s), Brofman demanded to know where "exactly" plaintiff would be on Sunday, to which Ward

5

replied that she would be at The Wesley Inn, Hazlet, New Jersey. Brofman replied that he would be there some time after 10:00 p.m.

29.     On or about June 27, 2004, plaintiff attended the Irish Festival, which she had attended from time to time with her boyfriend of sixteen (17) years whom had recently passed away.  After attending a bagpipe competition and other Irish music concerts, Plaintiff returned to her hotel room.  At approximately 10:45 p.m., Brofman appeared at Ward's hotel room, knocked, and entered.

30.     Brofman entered, looked at Plaintiff, looked around the room and then went directly to the bathroom.  Plaintiff heard the water running and the toilet flush, and she was seated in one of the chairs by the window.  Brofman exited the bathroom the bathroom and paced for about five minutes.  He then sat on the bed, he told plaintiff to "get undressed."

31.     Plaintiff was still seated in the chair staring at the floor. She walked past. Brofman who was still seated fully dressed on the foot of the bed and plaintiff then went into the bathroom.  She sat down on the toilet, did not get undressed or use the toilet but rather remained sitting in the bathroom totally embarrassed and intimidated.

32.     Plaintiff began to panic, and did not know what to do, so she just remained seated. After about ten to fifteen minutes, Brofman knocked on the door and commanded "Come Out".  Plaintiff  waited another moment, took off her clothes,  wrapped herself in a towel and exited the bathroom.

33.     The lights were out in the room with the exception of one dim light in the corner of the room near the chars.  Brofman was in the bed with the covers pulled up on the side of the bed closet to the window.  Plaintiff climbed into the bed closet to the hotel door and as she climbed into the bed the towel fell away from her body.

6

34.    Brofman began to feel her breasts and work his hand into her vagina. Brofman then proceeded to have sexual intercourse with Plaintiff and kept repeating the word "bitch" during the intercourse until he ejaculated.

35.    Brofman went to the bathroom immediately after, as plaintiff remained on the bed and as soon as the bathroom door opened, plaintiff went in and sat hoping Brofman would leave.

36.    He waited and then knocked and said "come out." Plaintiff stayed in the bathroom a few minutes more and then came out.  Plaintiff then went into the bathroom again and when she returned Brofman demanded oral sex from her and they engaged in sexual intercourse again. Brofman then went to the bathroom, got dressed and left.

37.    The aforementioned sexual intercourse was nonconsensual because Plaintiff knew she would loose her job if she did not comply with Brofman's demand for sex.

38.    The very next day, on or about Monday, June 28, 2004, while working at Cybersettle, Brofman placed a note on Plaintiff's desk demanding/ordering plaintiff to meet him in the back parking lot of the White Plains Diner at 4:15 p.m.  Plaintiff, again out of fear of losing her job. followed Cybersettle's President's commands and met him at that location.

39.    Pursuant to Brofman's note, Plaintiff climbed into Brofman's black vehicle with tinted windows, in which Brofman was seated in the driver's seat, at which point Brofman took Plaintiff's hand and put it over his penis.  When Plaintiff removed her hand, Brofman unzipped his pants exposing himself and insisting on oral sex from Plaintiff.

40.    Plaintiff then opened the passenger door to the car to leave at which point Brofman stated, "If you get out of this car, you won't have a job by Friday".  Plaintiff quickly walked away and left the parking area.

7

41.    On or about Tuesday, June 29, 2004, Plaintiff was ignored and isolated. Her co-workers refused to assist her as they previously had done.

42.    On or about Wednesday, June 30, 2004, Plaintiff was talking to a co-worker when she and observed Brofman at the opposite end of the work area standing there with a suitcase on wheels.  When the plaintiff and defendant made eye contact with him, with a smirk on his face, took his finger and dragged it slowly across his throat. He then smirked and walked away.

43.    The next day, on or about Thursday, July 1, 2004, around noon, Plaintiff heard her co-workers say, "She's out of here".  At about 2:00 p.m., Plaintiff's supervisor and Miss Woodman, asked plaintiff to come to the conference room.  It was at this point and on this date that Plaintiff was terminated from her job.

44.    Cybersettle told Plaintiff she was terminated on the grounds that she was "not the right fit".

45.    Defendants subjected plaintiff to an ongoing, pervasive and sexually offensive, hostile work environment.

46.    The sexually hostile environment to which defendants subjected Plaintiff represented a clear violation of Title VII.

39.    Because of the sexual harassment that Plaintiff endured at Cybersettle, she suffered  mental anguish, humiliation, and extreme psychological distress and emotional pain and suffering.

8

## COUNT I

### TITLE VII - All Defendants (Hostile Work Environment)

40.  Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "39" of this complaint with the same force and effect as if set forth herein.

41.  Defendant Cybersettle discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex, by creating a sexually hostile environment.

42.  In taking the above-described discriminatory actions, defendant Cybersettle acted with malice and reckless indifference to plaintiff's rights under Title VII.

43.  Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries as a result of defendant's actions.

## COUNT II

### TITLE VII - All Defendants (Retaliation)

44.  Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "43" of this complaint with the same force and effect as if set forth herein.

45.  Defendant Cybersettle discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex, by creating a sexually hostile environment and retaliated against her complaints of such discrimination and sexually hostile environment by terminating her employment.

46.  In taking the above-described discriminatory actions, defendant Cybersettle acted with malice and reckless indifference to plaintiff's rights under Title VII.

9

47. Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries as a result of defendant's actions.

## COUNT III

## NEW YORK STATE HUMAN RIGHTS LAW - Hostile Work Environment - Cybersettle

48. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "47" of this complaint with the same force and effect as if set forth herein.

49. Defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex, by creating a sexually hostile environment in violation of New York State Executive Law §§ 290 et seq.

50. Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries as a result of defendant's Cybersettle's actions.

## COUNT IV

## NEW YORK STATE HUMAN RIGHTS LAW - Retaliation - Cybersettle

51. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "50" of this complaint with the same force and effect as if set forth herein.

52. Defendant Cybersettle discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex, by creating a sexually hostile environment and retaliated against her complaints of such discrimination and sexually hostile environment by terminating her employment.

53.  In taking the above-described discriminatory actions, defendant Cybersettle acted with malice and reckless indifference to plaintiff's rights under New York State Executive Law §§ 290 et seq.

54.  Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries as a result of defendant's actions.

## COUNT V

## NEW YORK STATE HUMAN RIGHTS LAW  Hostile Work Environment - Brofman

55.     Plaintiff repeats and realleges each and every allegation contained in paragraphs one through 54 of this complaint with the same force and effect as if set forth herein.

56.  Brofman aided and abetted defendant in taking its discriminatory  actions against plaintiff.

57.  Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries as a result of defendants' actions.

## COUNT VI

## NEW YORK STATE HUMAN RIGHTS LAW  Retaliation - Brofman

58.     Plaintiff repeats and realleges each and every allegation contained in paragraphs one through 57 of this complaint with the same force and effect as if set forth herein.

59.  Brofman aided and abetted defendant in taking its discriminatory  actions against plaintiff.

60.  Plaintiff has suffered and continues to suffer mental anguish, emotional distress, and other compensable injuries as a result of defendants' actions.

11

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

a. Declaring that the acts and practices complained of herein are in violation of Title VII and the New York State Human Rights Law;

b. Directing defendants to pay plaintiff for all earnings and other benefits she would have received but for defendants' unlawful conduct, including but not limited to wages, back pay, front pay, commissions, future lost earnings, other lost benefits, and interest thereon;

c. Directing defendants to pay plaintiff compensatory damages, including damages for her mental anguish, pain and suffering and humiliation;

d. Directing defendants to pay plaintiff the costs of this action together with reasonable attorney's fees;

e. Directing defendants to pay punitive damages; and

f. Granting such other and further relief as this Court deems necessary and proper.


## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury.

Dated:       White Plains, New York
             August 4, 2005


                          Respectfully submitted,

                          CANTER LAW FIRM P.C.

         By:              _____
                          Nelson E. Canter (NC2457)
                          Attorney for Plaintiff
                          123 Main Street – 14th Floor
                          White Plains, New York 10601
                          (914) 697-4950


12